Thank you all. Our last case on the call today is Agenda No. 7, No. 129755, NRAV-BS. My understanding here is that the athletes will be splitting their times and being in agreement, 10 minutes, 10 minutes. And obviously the felons will go first and have the full 20 minutes to argue. And with that, counsel, you may begin. Thank you, Your Honor. Do I need to reserve time for rebuttal of 10 minutes? Pardon? Do I need to reserve time for rebuttal in advance? I just wanted to confirm. We would ask to reserve five minutes and rebuttal. Okay. Okay. Sorry. Good morning, and I am Ross K. Holberg, Assistant Public Defender with the Cook County Public Defender's Office of Chicago, for the appellant and father, Devon Howard-Ell. May it please report. Today I will address why appeals of abuse, neglect, and dependency findings are not moot on appeal whenever a parent challenges less than all of the findings of abuse, neglect, or dependency. This is particularly so because of the collateral and direct legal consequences that are attended to a finding of abuse or neglect. Second, I will explain why this court should decide this case on the merits, regardless of whether the court finds the issue moot, because justiciability is not jurisdictional in Illinois reviewing courts. To that extent, a decision on the merits of this appeal is merited where the parent's fundamental rights to raise their family are at stake. Initially, I want to just briefly touch on the meaning of mootness. And in Andrea F., this court said it does not decide moot questions or decide issues where the result will not be affected, regardless of the outcome. And a moot question is one where the court cannot provide relief because of a change in circumstances. Counsel, as a practical matter, I'm wondering, so if you have a situation where all of the findings or the bases for the finding of abuse, neglect, or dependency, or whatever, are not challenged and you still allow review and you find that maybe the one that was challenged was not appropriate, so then we go back and do what? I mean, what about the ones that weren't even challenged? Yes, Your Honor. So under the system set up by the Juvenile Court Act, we have a two-step process from adjudication and disposition. Excuse me. In the event that a court, that a trial judge makes a finding that can be upheld, say, on neglect grounds, but it's abuse, the finding cannot be upheld. No, no. I'm talking about, I actually did juvenile court representing children, parents, and then that was my call as a judge for a period of time. So what I'm talking about is, let's say you have a petition filed, and the petition alleges that the child is abused and the petition alleges that the child is neglected. So if we have a circumstance like we have here where only one of the findings that the court made is challenged, there is no challenge as to the other one, and the court found that the state met its burden in establishing the other one, where does that leave us? So on one hand, in this case specifically with the dependency finding, that would not go to a sense of fault in the sense of abuse or neglect would. I would say that those are culpable findings just by their very nature. On remand and what we believe, both on remand and in other aspects, the judge considering this case is supposed to consider the case holistically and literally with the best interest of the child in mind. If the court believes that it found, if the court believes that father or mother was neglectful or abusive, I believe that, and to the extent that it met a judicial level of finding, I believe that would affect the judges considering the law fairly, the willingness to impose certain services at disposition. It may affect, particularly in the case of dependency here, whether the court holds a dispositional finding as to a particular parent. Each case is a little bit different, so that may be comparable. I'm not so sure I'm asking my question in a way that you're understanding, so I'm going to try to rephrase it one more time. Let's say that the trial court finds two bases to basically make the child a ward of the court and give DCFS custody of the child. Only one basis is challenged. If that other basis that was not challenged was upheld by the circuit court, even if the appellate court or we were to say the one that's being challenged was not proper, you still have this other one hanging out there where the court found that based on that, the person, you know, the child is neglected or whatever. What do we do in that instance? I believe that when Your Honor says we do, are you referring legal? On appeal. So the child has been found to be a ward and DCFS has custody based on the finding of neglect, and you got the finding of abuse overturned on appeal. There's still that finding of neglect that's out there that's not challenged, so does that change the status of the child? I believe it would require a remand for a new dispositional hearing based on the findings that were made that were precedent to the dispositional hearing. For the one that wasn't initially challenged or the one that was challenged and found to be inadequate? For the disposition based on the findings that were found to be adequate. That's the dependency finding, right? Yes. That's the area where it was not challenged. Yes, Your Honor. So you're going to have a dispositional hearing no matter what. Yes, and that is why we believe that we don't believe that that is the sort of the cutoff point is whether or not there will be a dispositional hearing. Our position is that is not what defines whether an issue is moot, particularly with regard to collateral consequences. Counsel, I have a question for you. I'm looking at the adjudication order. As best I can determine, it only made a finding with respect to the mother. There's no finding with respect to DHE. But he's appealing the adjudication order. So, yes, Your Honor. So this order doesn't even involve him, although the dispositional order does. So wouldn't it be necessary for him to challenge both orders and bring both orders before the court? So as a jurisdictional matter, Mr. DHE had to first go through a procedure disposition in order to challenge the adjudication order itself to that extent. So you're saying that you go back and have another dispositional hearing because there's already been one, right? Yes, there has been one where he was found neglectful. And the court, at the dispositional hearing, considered the totality of the circumstances, including for your client. And so that was part of the finding. At the disposition hearing? Yes. Yes, and one of the collateral consequences that we were, sorry, I guess it would be a direct legal consequence, is that the judge, who is presumed to know the law and to follow the law, here was bound by law having made the neglect finding to hold a fitness hearing as to Mr. Howardell. And Mr. Howardell's position would be that he was ready to take care of his child. In fact, the record shows that the reason the child, that V.S., was not allowed to go home with him the evening that Mr. Aitchie showed up to the hospital is because DNA had not been established. There was nothing indicating he was not a fit parent. In fact, the court had entered an order, I believe early on in the case, a temporary custody to consider Mr. Aitchie, and there was testimony by a caseworker earlier on that there was nothing in his background that would have prevented him from being a parent. That's not the stage of the facts here. A heartbreaking case. A woman with deep, deep mental illness delivers a child, and the first issue is what's going to happen to this newborn? The mother, who already comes in with deep mental illness, now has a psychotic event and basically is hospitalized for that. What's going to happen to the newborn? That's the issue before the court, correct? Certainly. And then there was a hearing in which, at first, it was not clear who the father was at all, right? Correct. I was trying to get it up. And then there was a hearing where the DNA testing had taken place, and it was, therefore, your client had been identified as the father. Yes, he had identified himself as the father as well at the hospital. But then the woman who was deeply mentally ill said no, and then it went on, and then eventually it was testing that confirmed that he was the father. So still, the issue before the trial court that we're talking about is what's going to happen to this newborn, this infant, today? When the time is for this child to be released from the hospital and the mother is institutionalized and under heavy medication because of a psychotic event, what's going to happen to this newborn, right? That was the issue before the court, right? Certainly. And at the time of temporary custody, we have not, and this was the position that we've taken since the trial court, is that the child that V.S. was, we conceded, dependent at the time that V.S. was born because there was nothing that seemed to overridingly indicate that the hospital was unreasonable in waiting until there was a DNA verification, something along those lines, at that point in terms of temporary custody. But once Mr. H.E.'s paternity was established, he wouldn't have been kept from having a child had this situation not played out the way that it did, which was not related to his actions in that sense. So in terms of handling it at an immediate level, the court has this situation come in right before it. I don't see that there's a danger to the child because here, especially on these facts, Mr. Howard L. did bring to the attention of medical professionals the mother's mental health history as well as his concerns about her raising the child. And there was testimony that he was not living with the mother and had no plans to live with her. So in that case, I think that what the court could do here is simply enter a dependency finding and move forward with the child case with the parent who is suited to take care of the child. So then it went on to another hearing, the adjudicatory hearing, correct? Yes. Right? And then by then, your client had been determined to be the father and there was all sorts of expert witnesses testifying about the condition of the mother and what the, right? And then also, so again, the issue is the child, what's going to happen to the child, and what happened at that hearing in terms of your client? I'm sorry? What evidence did your client, your client participated, your client was there at the adjudicatory hearing, correct? Yes, Your Honor. And what, how, did he present evidence? What did he, how did he participate? He did not testify at the adjudication hearing. He relied on the state to prove his case primarily. The, the, his counsel, however, during closing, stated that it was, that essentially the theory of the case was that there was dependency. They didn't contest that, but asked that the order not name Mr. Howrell as a perpetrator of neglect. But the court did name him as a perpetrator of neglect, and that became an issue under dispute here. And that's what you want to appeal, is the finding of the trial court at that hearing that the child was neglected. Also, the trial court found the child was also dependent because there was nobody to take care of the baby. And you're saying that you can appeal one but not the other, correct? There could be, I don't want to rule out the ability to appeal a certain issue in a creative or complex way. I don't, but on these circumstances that, yes, that is essentially. You have only chosen to appeal one of the findings. Yes. But then what happened was, based on the findings, one or both, the next issue was, okay, what's going to happen to the child? Where is this child going to go? And then there was a hearing about where the child would be placed, right? And your client participated in that, and the court ultimately found that the goal was to reunite the family and to give your client 12 months to take parenting classes and to somehow demonstrate he was able to take care of this child, correct? Yes, Your Honor. And we would observe that the North Star of the Juvenile Court Act is the best interest of the child. And the Juvenile Court Act ultimately wants us to reunite families when possible. We had testimony early on in the case that Mr. Howard Elk could take care of the child, or was not barred from taking care of the child. The proper placement of the child with their parent when possible, with their biological parent who is ready and willing and is living in an area with his family, like Mr. Howard, Mr. H.E., was. In this case, I believe that the best interests of the child are served by having correct findings on each of these matters. And in this case, specifically, the judge, we disagreed with the appellees over whether there was an adequate finding under Madison H. by the court. But it does appear from the record that the court was basing its thought process on Mr. H.E. having not completed services, which he testified he had just been referred to. And he made complaints of delays in those services. And that's the ready component. I'm sorry? That's the ready component, right? You said ready and willing. Yes. And the court basically said he's not ready. It found him unable. Yeah, that he's unable. Yes, Your Honor. And so with respect to that, though, I mean, that is not the only issue that could be faced, that could be fault, Mr. H. in the future. Excuse me. He could be found to have anticipatory neglected another child, which the state has argued in this case. He obviously has argued he is not a good parent, and it has brought in a petition regarding him already. He cannot challenge an indicated report if one was entered. And this applies to parents, not just Mr. Howard. Excuse me, not just Mr. H.E. In this case, essentially what the appellates are proposing is a presumption of no collateral consequences in these cases when there is one challenge to find, one finding challenge to not the other. We submit that consistent with CBRON v. New York, which was adopted by the United States in the context of criminal cases. There should be a presumption of collateral consequences. It would be very time-consuming and unnecessary in proceedings that need to move along for developing the record for purposes such as arguing justiciability issues along those lines. I don't think that's what's intended by the act. And as this court noted, or excuse me, observed in the AP, the mere fact that the finding of neglect could be used in a future case to support anticipatory neglect, and as the First District noted in terms of other custody proceedings regarding involuntary commitments, these findings, they may be civil findings that are not criminal, but they do have effects on the litigant's life and ability to have custody over children, or even in Mr. H.E.'s case, to be a foster parent to another child because of the licensing. There's so much overlap there. With respect to the witness, though, if this court does determine that the, excuse me, if this court determines that jurisdiction, excuse me, that this court has, that this case has not moved on appeal, this court's jurisdiction is not impacted by any lack of justiciability. Because of the distinction here between our own Constitution and Article III of the U.S. Constitution, and under this court's precedence regarding justiciability doctrines such as mootness, justiciability doctrines are not necessarily jurisdictional in our reviewing courts. Under Article III, standing is the sine qua non of jurisdiction under federal courts, thanks to the case and controversy clause. However, we have no such clause in our Constitution. The only justiciability reference with respect to our court's jurisdictions in the 1970 Constitution regards actions in the circuit courts for which there must be justiciability as placed in Article VI. And I would note that among these justiciability doctrines, we have various such as standing is the ultimate one, and mootness has often been referred to as standing set in a time frame. But as this court recently acknowledged in Roe v. Raoul, even standing can be waived as a justiciability doctrine. And in this case where the fundamental rights of a parent and parents in general to raise their children are at stake, this court should decide the significant issues posed in this case regardless of whether the court finds there is jurisdiction. And if there are no further questions, I will reserve my remaining time for rebuttal. Thank you very much. Thank you. Once again, for the appellee, you will be splitting your time, correct? Good morning. May it please the court. I am Assistant Attorney General Anna Gottlieb for the people of the state of Illinois. I will begin by addressing the appellee's arguments about why the father's appeal of the neglect finding here is moot and not subject to exception. My colleague, Mr. Williams, from the office of the Cook County Public Guardian, will address any additional questions this court has about mootness as well as the remaining issues in this case. This court should affirm the appellate court's determination that the father's challenge to the finding of neglect is moot. Because the father did not also challenge the finding that V.S. was dependent, which alone would have resulted in a dispositional order, the appellate court was correct in determining that reviewing the neglect finding would have had no practical effect on the judgment. And this court should decline the father's invitation to create a broad rule that would presume collateral consequences in every case. Instead, this court should consider whether the father in this particular case has shown any collateral consequences unique to the neglect finding that warrant an exception from applying the mootness doctrine. He has not shown the possibility of any such consequences affecting him requiring inference. To start, the challenge on appeal to the circuit court's neglect finding is moot. By not challenging the fact that V.S. was determined to be dependent, the father has conceded that this case would have proceeded to disposition and resulted in a judgment. As such, there would be no practical... Are you saying that there is no difference between a dependency finding and a finding of abuse and neglect? For the purposes of whether this case would have gone to disposition, no. Under the Act, once a child is adjudicated to be neglected, dependent, or abused, the case proceeds to disposition. So in this circumstance where you're waiting for DNA results, what would have been a proper challenge for a, at that point, a putative father to the finding of dependency because they don't have a legal right to the child at that point? What would have been the challenge? So certainly the father would have had standing to challenge the dependency finding whether he was... First of all, he was the putative father at the time of the petition, but by the time of the adjudication, he was determined to be the father through DNA testing. But I guess the issue is not necessarily whether he had a meritorious argument on the dependency finding. The issue here is that there were two separate findings that would have led to disposition. So it's not whether he could have properly challenged it. It's whether he brought a challenge to one. And whether this court could review or should review the dependency finding is beside the point because that is not properly before this court. There is a direct path for the circuit court to have gone to disposition, and that is dispositive on whether the review of the neglect finding itself is moot. So at the adjudicatory hearing when the court was determining whether or not the child was neglected and dependent, did the father know by that time that he had been determined to be the father by DNA testing? Yes, Your Honor. So at the adjudicatory phase, the father had the opportunity to participate and object to that proceeding? Yes, Your Honor. Yes, Your Honor. The record does not show that he presented any evidence, but paternity was established before the adjudication hearing commenced. And this court should ‑‑ I'm sorry. And the father here primarily argues that this court should review this matter under the collateral consequences exception to mootness. But this court should not apply a broad rule that would allow this court to review these issues where they would have no practical effect on the parties. Collateral consequences have only ever been presumed in the context of criminal appeals, and specifically appeals of criminal convictions. This does not rise to that level. The only example of a possible future consequence that the father alludes to is the admissibility of the neglect finding in a future proceeding. But a future proceeding may never occur, and if there is a future proceeding, the parent will have the opportunity to challenge that evidence in that subsequent proceeding to the extent that they believe there was an issue with the finding. This court was very clear in ‑‑ Doesn't that implicate some pretty important rights of a parent? So this, yes, Your Honor, it certainly does implicate important rights, but the provision ‑‑ You seem to brush them off as not being very consequential. And if you have a finding of neglect that was improvidently granted, that sort of follows you, and, you know, in the event there's another child or maybe a marriage to someone with children, that has some pretty big implications, doesn't it? So with respect to the father's argument here is the fact that the neglect finding could potentially be used as evidence in a future proceeding under Section 218 of the Act. And this court was very clear in Arthur H. that the admissibility of evidence is not a per se determination in future proceedings of neglect, abuse, or dependency. It's simply evidence that could be challenged.  And if they were finding that they were unable to challenge on appeal, they could certainly raise those concerns in that subsequent proceeding. So it's not as though the parent has to just accept the findings and not be able to challenge them later. And as this court well knows, all neglect and abuse proceedings are decided on their own facts. So for that reason, again, even if this was admissible evidence in a future proceeding, it could be challenged there. And in this particular case, because there is already a dependency finding, that could also be introduced in a future proceeding, and the father did not challenge that dependency finding here. And this is on the point of whether a presumption should be employed. And again, the presumption has only ever been used in instances of a criminal conviction. But this court has recognized a case-by-case approach to the collateral consequences exception to mootness in the involuntary commitment context. And the court can import that here by focusing on the particular facts to see whether the father has shown any collateral consequences attributable solely to the neglect finding. And he has not done so here. He says very generally that a neglect finding could possibly affect future employment choices, but he has not shown that he has ever pursued employment in child care or that he would not already be barred, so by his fairly extensive criminal record. And he also argues that a parent may not be able to challenge an indicated finding by DCFS if there is a standing neglect finding by the court, but the record here does not reflect that there is an indicated finding by DCFS based on these facts, so that also doesn't apply to him. And as Mr. Williams will shortly address, there is no merit to the father's arguments with regard to why the neglect finding should be reversed, so the court can alternatively affirm on that ground as well. And if there are no further questions, I'm going to ask that we will rest our briefs. Thank you very much. Good morning. May it please the court, Chief Justice, counsel. My name is Christopher Williams. I'm an assistant public guardian, and I'm here on behalf of E.S., the child. He's three and a half years old. A few points I would make on mootness. We do think it's important that the court issues an opinion that makes it clear that in certain cases where the parent appeals less than all of the adjudication findings, it may not be moot. We put this forth in our brief, theorizing about a case where a trial court makes a neglect finding as well as a physical abuse finding. And we recognize that those two adjudication findings are very distinct. So in that case where a parent wants to appeal a physical abuse finding but not the neglect finding, that would not be moot. And what's good for the goose is good for the yander. The public guardian of the state may want to appeal a case where neglect and physical abuse is alleged, and the court only makes a finding of neglect. In that case, we may want to appeal the denial of the physical abuse finding. So it works both ways. Why is the physical abuse finding and neglect and physical abuse so different from what we have here, neglect and dependency? Why? Well, it's very clear that I think when a parent physically abuses a child, to put it simply, it's much worse than neglecting a child. And specifically, it will have a profound effect on the services that that parent has to do. What does it have to do about legal principles like mootness? Well, because I think in that case, the parent would suffer a direct consequence as the case goes on and the reunification process unfolds. A parent trying to get reunified after they physically abused a child, it's a much more difficult thing than if they've neglected a child. So you're saying there are collateral consequences in that kind of finding? In that kind of finding. And we do, as the state does, urge a case-by-case approach along with in line with this Court's decisions in voluntary commitment cases. So why doesn't a finding of neglect based on injurious environment have the same collateral consequences, as you've described, physical abuse? Well, I think the consequences would be more direct within the actual case. I mean, it depends on whether a parent is found to have inflicted physical abuse or sexual abuse. And that changes... So we can't tell collateral consequences until the whole case is played out about what happens later. Is that what you're saying? No, that's not what I'm saying. I'm saying it's fair to say that when a parent is found to have physically abused a child, it's fair to assume that that parent is going to suffer a direct consequence as the case goes on. So it's not... Your argument is... I thought the argument was if there's two different findings, no matter what happens and the validity of either one of those, the case absolutely will move forward to a disposition hearing, and therefore it's moot. But that's not what you're arguing at all, right? Well, we're arguing in this case that it's moot. And as we said in our brief, we're asking the Court to adopt a case-by-case approach to determining mootness and instruct appellate courts to do the same and resolve this conflict in that way. And there should be no presumption. There should be no presumption. There's no presumption in involuntary commitment cases. In re Alfred H.H. specifically rejected this presumption that there will be collateral consequences. The Court said we have to look at the specific facts and legal... the interplay of those things in each individual case. So... Counsel, I have a question for you. In this case, the trial court said the dependency finding was to the mother only. But that the neglect finding was to both. Was that proper? It can be interpreted as improper in the sense that findings don't go to the parent. We know that. And this in re Z.L., very solid reaffirmance of the Arthur H. principle. We know that the finding does not attach to the parents. That's something that the court has discretion to do after making the finding. So if that's what the court intended, then it was a bit of a mistake. And, of course, the court reviews the judgment, not the reasoning. I think what... You can also interpret it by looking at it with the court trying to say, it's the mother who has the psychiatric problem. And that's why I'm finding dependency. Because the dependency statute discusses a parent with a physical or mental disability. So that's how I would interpret that. I mean, I think the court... I think that's what the court was doing. It was saying, I want to recognize the fact that this mother has a serious psychiatric problem. So to kind of bring in that fact and give a sort of a holistic set of findings that cover everything that's happening in the case. As has been pointed out, this statute is all about the best interest of the child. And so I'm wondering in this analysis of whether or not this is moot, should we be concerned about, well, I was blamed for this, or this order was entered saying that I'm responsible for this and this one was not. I mean, should we even really be going there? Usually not, Your Honor. I have to say that there are instances where there's some serious consequences when a parent is found to have inflicted... I'm thinking of physical and sexual abuse. The Juvenile Court Act actually requires the court to notify the Illinois State Police when somebody is found to have inflicted physical or sexual abuse. So that finding, if you call that a 2-21 accident admissions finding, that can have an effect on a parent. It may also be something the public guardian wants to appeal or the state. It's possible to have a case where there's clear evidence of physical abuse by somebody in the household, but it's unclear who did it. And the court may say, I'm not making a finding of who did it. And the state or we may argue strenuously that the evidence shows it was the mother, the father, the uncle. And we may want to appeal that. It's extremely rare. We've never done it, but theoretically it's possible. So we honestly think the question of whether that fault finding or the 2-21 accident admissions finding is moot, that also requires a bit of case-by-case analysis, and that would sort of expand the reasoning of In Re J W, which is the Fourth District case, which affirmatively founds this is not an issue. Determining who inflicted, determining who's responsible for neglect is not an issue. So we do think, I think J.W. was rightly decided. And I think that the case here was rightly decided, because in this case there's no distinction between dependency and neglect in terms of the effects on the father. There just isn't. I mean, there's nowhere to be found. If the father had been found to have physically abused, you know, it would be a different case. So in this case, applying your case-by-case approach, is your position that there were no collateral consequences to the respondent? That's correct. That's why. There were no collateral consequences. In terms of indicated findings, there's no evidence that the father was indicated for anything, and he was not the father when the case came in. Now, in relation to some of the other questions that were posed to my opposing counsel, I want to point out that the father has a theory of the case here, and it's that he was ready and able to take V.S. at birth. Now, he is wrong because he was not the legal parent. DCFS cannot just place children with somebody who says, I'm the dad. There has to be a legal determination of parentage. Well, initially at birth there was, right? The birth certificate, he's listed as the father if the mother's the same. Then she says no after she has an episode. Is that correct? I don't think he's not listed on the birth certificate. There was a voluntary acknowledgment that the mother rescinded herself immediately. So that voluntary acknowledgment had no effect. And sometimes parents can testify at a temporary custody hearing. They both testify under oath. He's the father, I'm the mother. You get a parentage finding. You couldn't do that here. I mean, the trial court was eminently reasonable in ordering parentage tests in this situation. Counsel, could you bring your remarks to a close? Thank you. On the merits, this court should – if this court gets to the merits, we'd ask that the court affirm the appellate court. It did address the merits properly. And what we're very concerned about is – I know the court as well is too – is that we get the case back to the trial court as soon as possible. So we can get on with V.S.'s life. And that's – and otherwise, we believe – if you get to the merits, please affirm on the merits. We believe all the evidence – all the arguments are unpersuasive. Thank you very much. We thank the court for its time. Mr. Hubbard? Mr. Hubbard, what are the collateral consequences to your client? Yes. My client, Your Honor, since we're confined to the record with this, as opposing counsel noted, there were no – there's no indicated finding, for example, on the record that could be challenged. However, in the context which we've all referenced of involuntary commitments, for example, the mere commitment of a – involuntary commitment of a person is a – rises to a level of stigma. And both of these kinds of cases are closed to the public. There's – yet the actual fact of involuntary commitment is considered stigma. Additionally, those cases to the – as Mr. Williams mentioned, in Alfred H.H., the – this court did avoid a per se approach to involuntary commitments and witness, and that was because in the appellate court there had been a development of many cases that had to do with essentially a per se rule only for involuntary commitment cases. And the court – Counsel, I don't understand that as a – what the Justice Rochford asked you, what are the collateral consequences to your client? And I didn't hear your answer. I'm sorry. Well, for one thing, there is, as we've discussed, the fact that the finding of neglect can be used against him in the future as a – in the form of anticipatory neglect. It's a judicial finding that I don't agree can necessarily be challenged just any time that he wishes to. It can be used in employment and licensing contexts. For example, in some instances, further background checks are required for individuals who have been indicated or alleged to have abused or neglected a child, and I would submit that where there's a judicial finding that the individual abused or neglected a child, that that is extremely difficult to overcome by a claim that, no, I did not neglect the child. Now, opposing counsel said that there was no indicated finding as to your client. Is that accurate? There is no indicated finding in the record, and I've been unable to locate one myself. But those cases just aren't open to the general public, right? Correct. May I ask a question on the merits? Yes, sir. At the adjudicatory hearing, the court found, among other things, that the child was neglected because of an injurious environment. And the statute defines that as a situation in which there is an unreasonable risk of harm and that there are no substantial steps to mitigate the risk of harm for the newborn. So here, the evidence at the hearing was, at the adjudicatory hearing, was that it was clear, it was very obvious, that this woman was deeply mentally ill. Your client knew that. There was no question about that. And as the court heard the evidence, there certainly was no evidence that was presented in the judiciary hearing that there had been any substantial steps taken to take care of this newborn after the birth. Doesn't that fit the definition of a neglected child based on the injurious environment? Well, at the time of the adjudicatory hearing, the evidence to be considered is that which was present at the time of the petition, unless it is from past the petition and bears on events from before then. I'm sorry. I'm sorry if you could repeat the question. At the adjudicatory hearing, everyone understood this woman was deeply mentally ill, including your client. Knew that this woman was deeply mentally ill and that she was about to have a child, his child, and that nothing was presented to the court to indicate that any plans had been made to mitigate any risk of harm that obviously there would be for a newborn whose mother is not institutionalized in Medicaid. Isn't that the very definition of a neglected child? In this case, I would say it is not, and that is because the mother's conduct, that was why the trial court said it would make a mockery of ASR of abuse to not label this dependence as to the mother, although the neglect finding was still entered. I know that's not in our brief, but the father was there. The father testified, knew this child, his child was about to be born, that the mother delivering this child was deeply mentally ill and there were no plans to take care of this child. He was ready, willing, and able at the hospital to take care of the child and to take the child home is where I would say that that distinction comes in, is that he could have done that if the child was not neglected. In fact, those were responsible adult steps to take. The fact that the mother had a mental illness is regrettable for her and for everyone involved in this. But he was ready, how did he show he was ready, willing, and able to take care of this child? I would say the showing up at the hospital, acknowledging paternity, and all that goes with acknowledging paternity, and then doing that again in court and submitting to these tests. There are cases where the fathers do not submit to the tests for a very long time. And he had in place a plan to take the baby home and where the baby was going to be and who was going to take care of the child and how he was going to be caring for this child. Were there any plans as to how this child, who is obviously dependent, a newborn, what was going to happen? Well, the child did end up staying with the maternal grandmother who, there was testimony, did assist. Was that during the adjudicatory hearing? During the adjudicatory hearing? I don't believe there was evidence entered at the adjudicatory hearing regarding that. And since the father didn't demonstrate he was ready, willing, and able to take care of the child to mitigate the injurious environment, there was a planning neglect, correct? I would say that he showed up ready, willing, and able, and was able to parent the child and that the child had a safe place to go and was not neglected by anyone but was regrettably dependent due to the mother's mental illness. And as to the public's argument regarding collateral consequences and physical abuse and neglect, I think there's a similar logical problem there is that neglect is culpable as is abuse. And in fact, this court has said that abuse and neglect, or certainly the appellate court, I believe this court has said that abuse and neglect can show in the same circumstances that they're very sui generis dependency. Literally, the state of the statute is that these are not caused. In this case, it's because of the parent's illness. There is another one for where the child, dependency C, I believe, for where the child is unable to be parented, to be managed effectively. And I would say that regarding that using a case-by-case approach here, which is, the appellees describe it as a case-by-case approach, but I would consider it an approach that assumes categorically a lack of collateral consequences. And the assumption of collateral consequences in the context of involuntary commitment has been adopted, not in this state, but by other jurisdictions that have considered the issue, in Iowa, in INRAE-BB, as well as Utah, INRAE-Giles, GI, LAS. These cases are cited in our brief. If the court does not have any further questions, at this time, pursuant to the request, excuse me, pursuant to the relief requested in our brief, we respectfully request that this court reverse the finding of neglect, reverse the appellate court's judgment finding this appeal moot, and reverse the substantive findings of neglect and disposition on the grounds raised in our brief. And thank you very much for your time. Thank you all for your spirited arguments. This case, number, it's under number 7, number 129755, INRAE-VS, will be taken under advisory.